

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed August 5, 2013**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN FREDERICK SKELTON, III | § | CASE NO. 12-34350 |
| Debtor | § | |
| | § | |

_____

| | | |
|---|---|---|
| JOHN FREDERICK SKELTON, III, et al., | § | |
| Plaintiffs | § | |
| v. | § | Adversary No. 12-3184 |
| URBAN TRUST BANK et al., | § | |
| Defendants | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgment (the "Motion") filed by Urban Trust Bank ("UTB") and Cenlar FSB ("Cenlar") (collectively, the "Defendants"). A hearing on the Motion was held on July 15, 2013. At the conclusion of the hearing, the Motion was granted on two of John Frederick Skelton, III's ("Skelton") claims – *i.e.*, for fraudulent misrepresentation and negligent misrepresentation. Supplemental briefing was requested by the Court with respect

to the remaining two claims – *i.e.*, to quiet title and for declaratory judgment. The Motion was taken under advisement regarding the remaining claims upon the filing of the supplemental briefing on July 19, 2013. The Court has carefully reviewed the supplemental briefs and is prepared to rule on the balance of the Motion.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On May 4, 2007, Skelton signed a $1,043,500.00 Interest-Only Period Fixed Note payable to Greenpoint Mortgage Funding, Inc. (the "Note"). *See* Note, Appendix under L.B.R. 7056-1(f) in Support of Plaintiffs' Response to Motion for Summary Judgment of Urban Trust Bank and Cenlar, FSB ("Response Appendix"), Exhibit 3, pp. 49-52. Also on May 4, 2007, Skelton and his wife, Dyann Skelton, signed a Deed of Trust (the "Deed of Trust") to secure the payment of the Note. Deed of Trust, Response Appendix, Exhibit 4, pp. 53-72. The Deed of Trust was secured by real property located at 5020 Abbot Avenue, Highland Park, Texas (the "Property"). *Id.* at p. 55. The lender under the Deed of Trust was Greenpoint Mortgage Funding, Inc. ("Greenpoint") and Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the Deed of Trust "solely as nominee for Lender and Lender's successors and assigns." *Id.* at pp. 53-55.

It appears that Greenpoint transfered the Note to MCMCAP Homeowners' Advantage Trust III ("MCMCAP"). Although no party has produced the original allonge transferring the Note to MCMCAP (if indeed an allonge was ever made at the time of transfer), the transfer is evidenced by an allonge executed in blank by Greenpoint on or about August 1, 2011. *See* Allonge to Note, Amended Appendix under L.B.R. 7056-1(c)(2) in Support of Motion for Summary Judgment of Urban Trust Bank and Cenlar FSB ("MSJ Appendix"), Exhibit 1-A, p. 11. On December 18, 2008, MERS assigned the Deed of Trust to MCMCAP. Assignment of

Deed of Trust, MSJ Appendix, Exhibit 1-C, p. 32. The assignment of the Deed of Trust to MCMCAP was recorded on January 21, 2009, in the real property records of Dallas County, Texas, under Clerk's File No. 200900018896. *Id.*

On July 16, 2009, UTB purchased the Note from MCMCAP along with a group of other mortgages. Affidavit of David R. Mady, MSJ Appendix, Exhibit 2, p. 65. UTB received the Note on July 17, 2009 by Federal Express delivery. Affidavit of Michael Farrell, MSJ Appendix, Exhibit 3, p. 97-98; Business Records Affidavit, MSJ Appendix, Exhibit 5, pp. 117-118. On August 9, 2009, MCMCAP assigned the Deed of Trust to UTB pursuant to a Corporate Assignment of Deed of Trust, and this assignment was recorded on May 13, 2010 in the real property records of Dallas County, Texas under Clerk's File No. 201000120743. Corporate Assignment of Deed of Trust, MSJ Appendix, Exhibit 1-D, pp. 33-34. After acquiring the Note and Deed of Trust, UTB named Cenlar as the servicer of the Note. *See* Notice of Default, MSJ Appendix, Exhibit 1-F, p. 48.

It is undisputed in the summary judgment record that UTB lost the Note soon after receiving it from MCMCAP. Affidavit of David R. Mady, MSJ Appendix, Exhibit 2, pp. 65-66. UTB searched for the Note by taking the following actions:

> tracking of shipping package to confirm receipt of the delivery package, review of the UTB records pertaining to the Skelton Note, review of other loan collateral files to determine whether the original Skelton Note had been misfiled in the collateral file of another loan, search of the desks and office furnishings of UTB personnel who had handled or were believed to have handled the Skelton Note and related documents.

*Id.*, p. 66. Although UTB has not been able to determine the whereabouts of the Note, "upon information and belief UTB believes that the original Skelton Note was shredded inadvertently or accidentally." *Id.*

In the fall of 2010, Skelton requested a copy of the Note and his loan file from Cenlar. Skelton Deposition, Response Appendix, Exhibit 1, p. 52:19-23.[1] By letter dated November 19, 2010, UTB sent Skelton a copy of an October 26, 2009 Affidavit of Lost Note executed by UTB's Treasurer. *Id.* at 52:6-18; Affidavit of Lost Note, MSJ Appendix, Exhibit 2-A, p. 68. In late 2010 and continuing in 2011, Skelton tried to refinance the Note by arranging for Pavillion Bank to purchase the Note from UTB. Skelton Deposition, Response Appendix, Exhibit 1, pp. 54:12-56:14. The sale of the Note from UTB to Pavillion was never completed. Affidavit of Stephen Storey, MSJ Appendix, Exhibit 9, p. 198.

It is undisputed in the summary judgment record that Skelton has failed to pay the monthly installments of interest due under the Note from and after August 1, 2010. Loan History, MSJ Appendix, Exhibit 1-E, pp. 35-46; UTB Proof of Claim, MSJ Appendix, Exhibit 10, pp. 199-259. On October 12, 2010, UTB mailed a notice of default to Skelton by certified mail. Notice of Default, MSJ Appendix, Exhibit 1-F, pp. 47-50. On March 14, 2011, UTB gave notice of the acceleration of the Note, that the balance of the Note was due and payable in full, and that the Property would be foreclosed on April 5, 2011. Notice of Acceleration, MSJ Appendix, Exhibit 4, pp. 101-16. The Notice of Substitute Trustee's Sale was filed with the County Clerk of Dallas County, Texas, on March 14, 2011. Notice of Substitute Trustee's Sale, MSJ Appendix, Exhibit 11, p. 314.

On April 4, 2011, the Plaintiffs commenced a state court lawsuit in the 192nd Judicial District Court of Dallas County, Texas alleging, *inter alia*, that UTB could not enforce the Note or the Deed of Trust because the original Note had been lost. Plaintiffs' First Amended Original

---

[1] When citing to depositions, the Court will cite to the page numbers used in the deposition transcripts rather than the page numbers of the relevant appendix. The Court will also cite to the relevant lines on each page of the deposition transcript.

Petition and Application for Restraining Order and Request for Disclosure, 12-3184, Docket No. 1, Exhibit B-3.  On April 4, 2011, the 192nd District Court issued a Temporary Restraining Order restraining Defendants from foreclosing on the Property and set a hearing for a preliminary injunction.  Temporary Restraining Order & Order Setting Hearing for Preliminary Injunction, 12-3184, Docket No. 1, Exhibit B-5.  The temporary restraining order was extended several times by agreement, and on July 8, 2011 the 192nd District Court entered a temporary injunction restraining the Defendants from taking any action to foreclose the Property and ordering the Defendants to produce the loan file and the original Note.  Order for Writ of Temporary Injunction, 12-3184, Docket No. 1, Exhibit B-18.  After various extensions of time, the case was set for non-jury trial on July 16, 2012.  Pre-Trial Order, 12-3184, Docket No. 1, Exhibit B-45.  Nine days before the scheduled trial, on July 7, 2012, Skelton commenced the underlying Chapter 11 case, and UTB removed the state court lawsuit to this Court as Adversary No. 12-3184.

     Currently, John Skelton is represented by counsel, and Dyann Skelton is pro se.  In the state court action, Dyann Skelton and John Skelton were initially represented by the same attorney and both were parties to the First Amended Original Petition.  *See* Plaintiffs' First Amended Original Petition and Application for Restraining Order & Request for Disclosure, 12-3184, Docket No. 1, Exhibit B-3.  However, the Plaintiffs' original attorney withdrew, and later Mr. Whittmore entered an appearance solely on behalf of John Skelton.  *See* Debtor's Application to Amend Order Employing Gregory A. Whittmore as Counsel for the Debtor, 12-34350, Docket No. 52, p. 2.  After her original attorney withdrew, Dyann Skelton was unrepresented in the state court and has remained unrepresented after the case was removed to this Court.  Although Mr. Whittmore has requested approval from this Court to represent both

Dyann and John Skelton, this request has not been approved and Dyann Skelton remains unrepresented. She was not a party to the Second Amended Original Petition filed in the state court lawsuit or to Skelton's Amended Complaint here. *See* Plaintiff John F. Skelton's Second Amended Original Petition, 12-3184, Docket No. 1, Exhibit B-37; Plaintiff John F. Skelton, III's Amended Complaint, 12-3184, Docket No. 10. Thus, her claims against the Defendants remain those pled in the state court First Amended Original Petition.

## II.   SUMMARY OF PLAINTIFFS' CLAIMS

Skelton's Amended Complaint pleads four causes of action. The first cause of action is a suit to quiet title. Skelton alleges that "[w]ithout the original Greenpoint Note and a chain of title showing valid transfers of the Skelton Deed of Trust from Greenpoint Mortgage Funding, Inc. to MCMCAP Homeowners' Advantage Trust, III and from MCMCAP Homeowners' Advantage Trust, III to UTB, the alleged substitute trustee was and is not authorized to give notice or conduct a foreclosure sale to deprive Skelton of his homestead." Amended Complaint, 12-3184, Docket No. 10, p. 6. Therefore, "Skelton is entitled to judgment quieting his title in the Property by cancelling the Skelton Deed of Trust." *Id.*

Skelton's second cause of action is for a declaratory judgment and injunction "that Defendants do not possess, hold, or own the Greenpoint Note, the Greenpoint Note is unsecured, and the Skelton Deed of Trust cannot be enforced against the Property; and . . . permanently enjoining Defendants from any action to foreclose against the Property." *Id.* at pp. 6-7. The third and fourth causes of action are for fraudulent misrepresentation and negligent misrepresentation arising from the Defendants' "material misrepresentations to Skelton regarding possession of the original Greenpoint Note that were false." *Id.* at p. 7.

As noted previously, Dyann Skelton is not a party to Skelton's Amended Complaint. As a result, the Defendants' Motion, at least as to Dyann Skelton, is a request for summary judgment as to the state court First Amended Original Petition. *See* Plaintiffs' First Amended Original Petition and Application for Restraining Order & Request for Disclosure, 12-3184, Docket No. 1, Exhibit B-3. This petition states that UTB and Cenlar are not in possession of the Note and that they are not entitled to foreclose on the Property. *Id.* Further, the petition requests a temporary injunction hearing. *Id.* While pled a little differently, Dyann's claims essentially mirror Skelton's first two claims – *i.e.*, to quite title and for declaratory relief.

### III. LEGAL ANALYSIS

#### A. Relevant Standard

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (as made applicable by Fed. R. Bankr. P. 7056). In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market,* 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence") (*citing Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pounds Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not

proceed to assess the probative value of any of the evidence"). While courts must consider the evidence with all reasonable inferences in the light most favorable to the non-movant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

After the movant has presented a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to show with "significant probative evidence" that there exists a genuine issue of material fact. *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted). However, where "the burden at trial [as to the material fact at issue] rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### B. As Applied Here

The essential question underlying all of the Plaintiffs' causes of action is whether UTB owns and is entitled to enforce the Note and the Deed of Trust. The Court will analyze each in turn.

#### 1. UTB is Entitled to Enforce the Note

To recover on a promissory note in Texas, an obligee must establish: (1) the existence of the note in question, (2) that the borrower signed the note, (3) that the person is entitled to enforce the note, and (4) that a certain balance is due and owing under the note. *See Martin v.*

*New Century Mortgage Co.*, 377 S.W.3d 79, 84 (Tex. App. – Houston [1st Dist.] 2012, no pet.). Based upon the summary judgment evidence before the Court, it is uncontroverted that (i) the Note exists; (ii) Skelton signed the Note; and (iii) a balance is due and owing under the Note. The photocopy of the Note itself is evidence of the existence of the Note and that Skelton signed the Note, and Skelton has also admitted that he signed the Note in his deposition. *See* Note, MSJ Appendix, Exhibit 1-A, pp. 5-11; Skelton Deposition, MSJ Appendix, Exhibit 8, p. 30:8-23. Further, evidence of a balance due and owing under the Note is established by the loan history, the notice of default, and the proof of claim that UTB filed in Skelton's Chapter 11 case. Loan History, MSJ Appendix, Exhibit 1-E, pp. 35-46; Notice of Default, MSJ Appendix, Exhibit 1-F, pp. 47-50; Proof of Claim, MSJ Appendix, Exhibit 10, pp. 199-259.

However, to recover on the Note, UTB must also show that it is entitled to enforce the Note. *See Martin*, 377 S.W.3d at 84. A person is entitled to enforce a note if they are "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)." Tex. Bus. & Com. Code Ann. § 3.301. A holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Tex. Bus. & Com. Code Ann. § 1.201(21)(a).

Although notes are usually transferred though indorsement, notes may also be transferred by delivery. Section 3.203 of the Texas Business and Commerce Code provides:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
>
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course.

Tex. Bus. & Com. Code Ann. § 3.203(a)-(b).

> Thus, the failure to obtain the indorsement of the payee does not prevent a person in possession of the note from being the person entitled to enforce it, but demonstrating that status is more difficult. This is because the person in possession of the note must also demonstrate the purpose of the delivery of the note to it in order to qualify as the person entitled to enforce.

Report of the Permanent Editorial Board for the Uniform Commercial Code, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes 6 (2011) ("PEB Report"). Therefore, if an instrument is transferred for the purpose of giving the recipient the right to enforce the instrument, but without indorsement, the recipient becomes "a non-holder in possession of the instrument who has the rights of a holder" and therefore can enforce the instrument. Tex. Bus. & Com. Code Ann. § 3.301; *see also Martin*, 377 S.W.3d at 84 ("Nevertheless, under common-law principles of assignment, a party who fails to qualify as a "holder" for lack of an indorsement may still prove that it owns the note."); *Bittinger v. Wells Fargo Bank NA*, No. H-10-1745, 2011 WL 5415664, at *8 (S.D. Tex. Nov. 8, 2011) ("Texas law makes clear that a party does not have to be a holder to enforce an instrument.").

UTB is moving for summary judgment on the grounds that they are "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309." *See* Tex. Bus. & Com. Code Ann. § 3.301. Under § 3.309,

> (a) A person who is not in possession of an instrument is entitled to enforce the instrument if:
>   (1) the person seeking to enforce the instrument:
>     (A) was entitled to enforce the instrument when loss of possession occurred; or
>     (B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>   (2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and
>   (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be

> determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Tex. Bus. & Com. Code Ann. § 3.309(a). The uncontroverted summary judgment evidence in this case shows that UTB's loss of possession of the Note was not the result of a transfer or lawful seizure. Rather, the original copy of the Note was likely accidentally shredded. Affidavit of David Mady, MSJ Appendix, Exhibit 2, p. 66. Further, UTB cannot reasonably obtain possession of the Note, and a diligent search did not uncover the Note. *Id.* Therefore, UTB is entitled to enforce the Note if it can establish that it "was entitled to enforce the instrument when loss of possession occurred." Tex. Bus. & Com. Code Ann. § 3.309(a)(1)(A).

The Plaintiffs essentially argue in the response and supplemental brief that a note may only be enforced by a party if it was transferred to them by allonge or direct indorsement. However, as stated above, this argument ignores the language of § 3.203(a) that states that a note may be transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Tex. Bus. & Com. Code Ann. § 3.203(a).

It is undisputed on the summary judgment record that Greenpoint was the original holder of the Note under § 1.201(21)(a) as the Note was in the possession of Greenpoint and made to the order of Greenpoint. *See* Note, MSJ Appendix, Exhibit 1-A, pp. 5-11. Greenpoint then transferred the Note to MCMCAP and MCMCAP subsequently transferred the Note to UTB. *See* Allonges to the Note, MSJ Appendix, Exhibit 1-A, pp. 9-11. As the Plaintiffs point out in the reply and supplemental briefing, there is some question of whether an allonge from Greenpoint to MCMCAP was ever actually attached to the Note. But, as stated above, a person can be entitled to enforce a note even if it was not properly assigned or indorsed, so long as it

was transferred for the purpose of giving the transferee the right to enforce the instrument. *See* Tex. Bus. & Com. Code Ann. § 3.203(a).

In this case, UTB has submitted an affidavit of the Vice President of Greenpoint stating that (i) Greenpoint did not hold or service loans after closing, (ii) it was the practice of Greenpoint to indorse transferred notes on the back of the note instrument, and (iii) Greenpoint regularly executes an allonge in blank "with specific reference to a particular note in order to establish the chain of title of a copy of the lost note," and which attached a signed allonge from Greenpoint in blank. Although there is no proof that this, or a similar allonge, was attached to the original Note before it was lost, the affidavit and allonge are sufficient to establish that the Note was originally transferred from Greenpoint to MCMCAP for the purpose of giving MCMCAP the right to enforce the instrument. Further, the uncontroverted summary judgment evidence shows that MCMCAP executed an allonge both in blank and to the order of UTB, and this likewise serves as evidence that MCMCAP intended to transfer the Note to UTB for the purpose of giving UTB the right to enforce the instrument. *See* Note, MSJ Appendix, Exhibit 1, pp. 9-10.

The Plaintiffs have not submitted any evidence which raises a genuine issue of material fact as to whether Greenpoint or MCMCAP intended to transfer the Note for the purpose of transferring the right to enforce the instrument. Thus, even if no allonge or indorsement from Greenpoint to MCMCAP was originally attached to the Note, the summary judgment evidence establishes that MCMCAP was entitled to enforce the Note, and therefore MCMCAP was able to transfer the right to enforce the Note to UTB. *See* PEB Report at pp. 5-6 (stating that a note may be transferred multiple times without indorsement, so long as each transfer was made with the intent of giving the transferee the right to enforce the note). While UTB lost the original Note

after it was transferred from MCMCAP, it has the right to enforce the lost Note under § 3.309 of the Texas Business and Commerce Code as it was entitled to enforce the Note at the time the loss occurred.

### 2.     UTB is Entitled to Enforce the Deed of Trust

It is uncontroverted that UTB was assigned the Deed of Trust. The summary judgment evidence establishes that MERS "as nominee of Lender and successors and assigns" assigned the Deed of Trust to MCMCAP. Assignment of Deed of Trust, MSJ Appendix, Exhibit 1-C, p. 32. The assignment of the Deed of Trust to MCMCAP was recorded on January 21, 2009, in the real property records of Dallas County, Texas, under Clerk's File No. 200900018896. *Id.* Further, MCMCAP assigned the Deed of Trust to UTB. Corporate Assignment of Deed of Trust, MSJ Appendix, Exhibit 1-D, p. 33-34. This assignment was recorded on May 13, 2010 in the real property records of Dallas County, Texas under Clerk's File No. 201000120743. *Id.* Skelton has not presented any evidence that the assignments of the Deed of Trust were invalid or not properly recorded. Therefore, under the summary judgment evidence, UTB is the mortgagee and has standing to enforce the Deed of Trust. *See* Tex. Prop. Code § 51.0001(3) (defining "mortgagee" as "the last person to whom the security interest has been assigned of record"); *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 828 (S.D. Tex. 2012) (stating that a mortgagee has the standing to initiate a foreclosure sale).

### 3.     Summary Judgment is Granted to UTB on All Counts

Having determined that UTB is entitled to enforce the Note and Deed of Trust, the Court will now turn to an examination of each count of Skelton's Amended Complaint. As explained above, the central premise of Skelton's Amended Complaint (and Dyann's First Amended Original Petition) is that UTB is not entitled to enforce the Note and Deed of Trust. As the Court

has determined that UTB is entitled to enforce the Note and Deed of Trust, summary judgment will be granted to the Defendants on all counts.

### a)   Count 1 – Quiet Title

Under Texas law, the elements of a cause of action to quiet title are: "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Cruz v. CitiMortgage, Inc.*, 3:11-CV-2871-L, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012). As discussed above, the claims of UTB under the Note and Deed of Trust are not "invalid or unenforceable." Rather, they are both valid and enforceable. As well, "[a] plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Gray v. Wells Fargo Bank, N.A.*, 4:12CV576, 2013 WL 3097800, at *2 (E.D. Tex. June 18, 2013). Skelton is clearly in default on the Note. Accordingly, the Plaintiffs' interest in the Property is not superior to that of UTB. *See id.* Therefore, UTB and its servicer, Cenlar, are entitled to summary judgment as to Skelton's cause of action for quiet title.

### b)   Count 2 – Declaratory Judgment

Skelton's second cause of action is for a declaratory judgment and injunction "that Defendants do not possess, hold, or own the Greenpoint Note, the Greenpoint Note is unsecured, and the Skelton Deed of Trust cannot be enforced against the Property; and . . . permanently enjoining Defendants from any action to foreclose against the Property." Amended Complaint, Docket No. 10, pp. 6 & 7. UTB admits that it is not the "holder" of the Note. Defendants' Brief in Support of Motion for Summary Judgment, Docket No. 23, p. 17. However, as stated above, the summary judgment evidence has established that UTB is entitled to enforce the Note and

Deed of Trust. Therefore UTB and its servicer, Cenlar, are entitled to summary judgment as to Skelton's cause of action for declaratory judgment.

### c)  Count 3 – Fraudulent Misrepresentation

At the conclusion of the hearing on the Motion, the Court orally ruled that the Defendants are entitled to summary judgment as to Skelton's cause of action for fraudulent misrepresentation. For the sake of completeness, the Court will restate and expand upon its oral ruling. Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). "Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 922 (Tex. 2010).

> In measuring justifiability, we must inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1026 (5th Cir. 1990) (applying Texas law). Moreover, "a person may not justifiably rely on a representation if 'there are "red flags" indicating such reliance is unwarranted.' " *Lewis v. Bank of Am. NA,* 343 F.3d 540, 546 (5th Cir. 2003) (holding that plaintiff's decision to enter into transaction without undertaking additional investigation into tax consequences was not justifiable, given his access to professional accountants, the amount of money involved, and the ambiguous nature of the pertinent representation) (quoting *In re Mercer,* 246 F.3d 391, 418 (5th Cir. 2001)).

*Id.*

Skelton's claim for fraudulent misrepresentation fails for several reasons. First, to the extent that Skelton is alleging that the fraudulent misrepresentation was an assertion that UTB

owns and has the rights to enforce the Note and Deed of Trust, such a representation was not false for the reasons stated above.

Second, to the extent that the supposed fraudulent misrepresentation was an assertion that UTB held the original Note, Skelton cannot recover as there is no evidence of justifiable reliance on the summary judgment record. As stated by the Court in the hearing on the Motion, Skelton became aware that the Note was lost via a letter from UTB dated November 19, 2010. Skelton Deposition, Response Appendix, Exhibit 1, p. 52:6-18; Affidavit of Lost Note, MSJ Appendix, Exhibit 2-A, p. 68. This letter constituted a "red flag," and Skelton cannot claim that he justifiably relied upon any representations regarding the possession of the original Note after receiving the Lost Note Affidavit. Moreover, there is no evidence that Skelton was engaged in serious discussions with Pavillion Bank regarding the possible purchase of the Note before receiving the lost note affidavit from UTB.

Third, as noted in the Court's oral ruling, the summary judgment evidence shows that the transaction with Pavillion Bank failed for multiple reasons. For instance, as part of the transaction Skelton would have been required to supply $54,000 in new money. Stephen Storey Deposition, MSJ Appendix, Exhibit 9, p. 30:11-15. There is no evidence showing that Skelton could have actually provided the new money. *See id.*, pp. 30:18-31:11. Further, although discussions took place between the parties, UTB never formally agreed to sell the Note to Pavillion Bank. *Id.* at 189. Thus, even if UTB had been in possession of the original Note, there was no guarantee that the transaction between Pavillion Bank and UTB would have gone forward. Therefore, there is no proof of injury suffered by Skelton on the summary judgment record.

For each of these reasons, UTB and its servicer, Cenlar, are entitled summary judgment as to Skelton's cause of action for fraudulent misrepresentation.

### d) Count 4 – Negligent Misrepresentation

At the conclusion of the hearing on the Motion, the Court also ruled orally that the Defendants are entitled to summary judgment as to Skelton's cause of action for negligent misrepresentation. For the sake of completeness, the Court will restate and expand upon its oral ruling.

As noted at the hearing, the analysis detailed above for Count 3 applies equally to Skelton's claim of negligent misrepresentation.

> One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). First, any representation by UTB that it was entitled to enforce the Note and Deed of Trust was not false.

Second, to the extent the alleged misrepresentation was an assertion that UTB held the original Note, Skelton cannot recover as there is no evidence of justifiable reliance on this summary judgment record for the reasons stated above. Moreover, the standard to prove justifiable reliance for negligent misrepresentation is likely higher than the standard to prove justifiable reliance for fraudulent misrepresentation. "There is authority suggesting that fraud and negligent misrepresentation claims require different thresholds of justifiability, with it being more difficult to prove in the negligent misrepresentation context. *See, e.g., Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 n.5 (5th Cir. 1990)." *Grant Thornton LLP*, 314 S.W.3d

at 923 n.15. As Skelton has failed to prove justifiable reliance in the context of his fraudulent misrepresentation claim, he clearly fails to prove justifiable reliance in the context of his negligent misrepresentation claim.

Finally, as explained above, there is no proof of injury on this summary judgment record. Accordingly, UTB and its servicer, Cenlar, are entitled to summary judgment as to Skelton's cause of action for negligent misrepresentation.

### 4. The Automatic Stay Will Not Be Terminated

At the conclusion of the Motion, the Defendants request relief from the automatic stay under 11 U.S.C. § 362(d). However, the Defendants have not filed a motion for relief from stay in Skelton's Chapter 11 case, paid the required filing fee for such a motion, or served the United States Trustee and all parties requesting notice in the Chapter 11 case. *See* L.B.R. 4001-1(a)(4), (6) (requiring motions for relief from stay to be filed on the United States Trustee and "[a]ll parties requesting notice pursuant to Local Bankruptcy Rule 2002-1(j)"). Therefore, the Defendants' request for relief from the automatic stay will be denied without prejudice to the filing of a procedurally compliant motion.

It is the typical procedure for this Court to initially hold preliminary hearings on all motions for relief from stay. L.B.R. 4001-1(e)(1). "Absent compelling circumstances warranting an alternative procedure, evidence presented at preliminary hearings in the Dallas and Fort Worth Divisions on motions for relief from the automatic stay will be by affidavit only." *Id.*

Based upon the summary judgment record, the value of the Property is disputed. Skelton has estimated the value of the Property at $2,220,000. Declaration of Skelton, Response Appendix, Exhibit 5, p. 2. The Defendants have offered evidence that the Property was valued at $1,411,670 by the Dallas County Tax Office in 2012. Property Tax Balance, MSJ Appendix,

Exhibit 13, p. 322. Moreover, the Defendants have also offered an estimate by the Dallas Central Appraisal District which lists the 2013 value of the Property as $1,521,100. Dallas Central Appraisal District, MSJ Appendix, Exhibit 12, p. 318. It appears undisputed that the unpaid balance of the Note is $1,296,579.45. *See* Reply Brief in Support of Motion for Summary Judgment of Urban Trust Bank and Cenlar FSB, Docket No. 31, p. 12. The Defendants allege that the total due on the date of the hearing, with interest and real property taxes, was $1,402,496.71. *Id.*

In many cases, courts have found a lender adequately protected by the existence of a significant equity cushion. *See Matter of Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997) ("Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection."). Given the disputed evidence of value and the fact that an equity cushion could provide adequate protection to UTB, the Court concludes that this case presents "compelling circumstances warranting an alternative procedure." *See* L.B.R. 4001-1(e)(1). Therefore, if the Defendants choose to file a procedurally compliant motion for relief from stay, the Court will proceed to a final hearing on the motion and hear live testimony from witnesses with respect to all issues. Defendants' counsel is directed to set such a final hearing with the Court's Courtroom Deputy if a procedurally complaint motion is filed.

## IV. CONCLUSION

Summary judgment is granted for Defendants on all counts. However, the Defendants' request for relief from the automatic stay will be denied without prejudice to the filing of a procedurally compliant motion which, if filed, will proceed to a final evidentiary hearing.

### END OF MEMORANDUM OPINION AND ORDER ###